And to that extent, we're familiar with your cases. I think you're familiar with our lighting system. As long as you have a green light, you're running free. When the yellow light comes on, begin to bring your argument to a close. And then when the red light appears, finish your sentence and stop. And you do have a readout on your side now that shows you how much time you have left. And I remind you that rebuttal is for rebuttal only. We call the first case U.S. v. Washington. And we hear first from Mr. Clary. Good morning. This is an unusual case. The defendant was originally sentenced back to 46 months in prison. The sentence was vacated in 2005 by this court and sent back to the district court after Booker had been decided and the Supreme Court had remanded to this case, to this court. The original term of imprisonment of 46 months was reimposed in 2013 after the district court had been informed by Mr. Washington that the resentencing had never occurred. And as a consequence, we're raising two points here. One, the Barker v. Wingo speedy trial issue, which this court has held that speedy trial clause of the Sixth Amendment applies all the way through sentencing. The second issue that we've raised on remand, I raised on behalf of Mr. Washington the question whether the Mandatory Victim Restitution Act is constitutional in light of Apprendi because I do not think, as I read this statute, that there is any way for a defendant to be exposed to a restitution award under that statute without factual findings by the district court. Specifically, the district court has to determine by a preponderance that there is a victim and that it has to determine that that particular victim sustained a loss. So what do you want us to do? I mean, the sentence has been served. That's correct, Your Honor. The only thing that's left is a restitution? Yes, sir. Is there any probation or anything like that? He was released early from supervised release. So he's not subject to supervised release at this point on that particular conviction. And I think, you know, frankly, I think the government makes a good point on Barker v. Wingo with respect to delays in sentencing. I don't think when you're dealing with a convicted defendant that you want to undo the conviction or vacate the conviction. The most that I think you could do would be to suspend the rest of the sentence. The restitution?  Yes, ma'am. And so would you vacate the sentence? I would vacate that portion of the sentence. I guess vacate the sentence and leave the conviction in place. And that's the relief that you seek? Yes, ma'am. And how much is left of the restitution? I believe, and I asked on the record in the trial court what the amount was, and I believe it was $60-some-odd thousand dollars that was left. And your MVRA argument is precluded by circuit precedent, isn't it? I think that it is, and I've said that in my briefing. So we can't do what you ask, but you've preserved it, I guess, for the en banc court or the Supreme Court. That's correct. Is that your understanding? That's correct, Your Honor. Now, the one thing that I think is a little unusual about this case under the MVRA is that the conviction was only on the in co-ed offense of general conspiracy. And under 18 U.S.C. 371, there does not have to be a victim, which means that you've got a situation here where the jury never found that there was a victim. All of the restitution was awarded by the district court. You can't do anything about it. If the court said it's constitutional. I think your unpublished opinion in Elliott said that the rule of orderliness that this court follows should generally apply in situations like this, and I don't see a basis for distinguishing this case on that ground. It's a very intriguing argument. I think you're bound by your prior panel's contentions, but I do think, and I want to make it clear, I really do think that those are wrongly decided cases. There's no question. I mean, in my mind, after reading the statute, the district court just has to make those findings by a preponderance before the defendant is exposed to restitution. Okay. So do you want to talk about why we should vacate the sentence? Yes. I think . . . Let me ask you about the prejudice argument. Your argument was, well, by the time the court resentenced, couldn't really give relief on the sentence, and therefore the fact that the same sentence was reimposed doesn't affect the prejudice analysis. But I'm going to challenge that assumption. I mean, it seems to me the district judge is an honorable person, and if the judge had been persuaded that, hey, I think there should have been a lower sentence, but of course now I can't do that, I think it would be incumbent on the judge to say so. But by reimposing the same sentence and saying, I find that's the right sentence, why don't we give deference to the district court's own statement, I would have done the same sentence anyway, in assessing prejudice? I mean, you're basically saying the judge is lying, and I'm not sure that we should presume that. I want to make it clear I'm not taking that position. Okay. Well, then, if you're not, and the judge reimposed the same sentence, how is there any prejudice? Well, I don't think the judge felt that he had any choice but to reimpose the original sentence. How can you sentence somebody to less time than started with the judge? But there's no indication here that the judge indicated I wish I could have. I mean, we see judges all the time say my hands are tied by a mandatory minimum, my hands are tied by the Fifth Circuit, my hands are tied by everything under the sun. I see nothing here. In fact, I see the opposite. I see the judge indicating that this is the sentence he would have imposed, you know, five, six, seven years earlier had this happened as it should have. I don't believe he actually said that, Your Honor, but he did reimpose the same sentence, and my argument was that the judge felt that he really didn't have a choice at this point. The defendant had already served all the time. What was he supposed to do? He had to impose the sentence that he had based upon the time served and that the court didn't actually make any viewpoint at all as to whether there had been prejudice or not. That's correct. Okay, and where is your record authority for that? I mean, where does the judge indicate that? That he felt that he would have liked to impose, you know, if we could go back in a time machine, he would have liked to give a shorter sentence but now couldn't do it. He didn't say that. No, he didn't say that, and I'm not saying that. I'm saying that I believe that the record shows that the judge reimposed the same sentence and really didn't have an opportunity to consider Booker at all or the impact of Booker because the defendant had already served the time. But you're speculating that it would. I mean, the problem to me is that on the prejudice prong you have to show he would have come out better. Among other things, I know you have this argument that, you know, but in the sort of real-life prejudice, the real-life prejudice would be he sat in jail longer than he should have. And if he shouldn't have, if he would have spent that same time, had everything happened, that affects the prejudice analysis. Maybe it's not the end of the road for you. And I see nothing here that indicates that the judge wanted to give a shorter sentence but just by practicality couldn't, and you seem to want to assume that, and I don't see why I would assume that. I understand that the government is arguing it's speculative, just as Your Honor is making that argument. My point is what's not speculative is that he was denied the benefit of the mandate. There was no ability for the court to reconsider its initial decision because the time had already been served. And that has nothing to do with whether the judge was acting in good faith or not. It's just a matter of fact. It was impossible to undo what's been done. And that's my point. We don't have to reach the prejudice prong, do we? No, Your Honor. I think under Barker v. Wingo that there's the presumption in place. That's correct. So we don't have to deal with whether he's actually prejudiced or not. Yes, on a delay of this magnitude. It's an amazing delay, I mean just a shocking delay. Yes, it is, and I think Doggett also suggests that as well, Your Honor. It's not completely on point, but it certainly supports that. Why should there be a presumption of prejudice as to the sentence? Well, Your Honor, the way I look at it, federal sentencing these days almost is the most important part of the whole exercise. And, you know, a delay of this sort in the sentencing context, given the guidelines and the importance of the guidelines, even after they've been rendered non-mandatory, having individuals who can testify to your good character, et cetera, having people come in and, you know, especially in light of the fact that we now have a ruling out of the Supreme Court in Pepper indicating that subsequent events can impact resentencing. A timely resentencing gives the defendant the best opportunity to present his character, his good faith, et cetera. It's not like that in this case, though, is there? Well, I think there is something to that. I know that he had a subsequent conviction, and that, you know, obviously is not a helpful fact for me. But the truth is this guy has really turned his life around. He is supporting all the people in his family, as I've indicated here. And I think part of the reason the judge didn't, frankly, slap him with more time was because he was impressed with the fact that this guy had actually turned his life around. Which judge, the second crime or the first one? The second time. Now, when we're talking about why do we have a presumption of prejudice, it's because the Supreme Court has told us so. Well, that's right. It's not something that we have created or that the Supreme Court has said. That's in the context of guilt and innocence, isn't it? Yes. That is in the context. There's a real problem there where witnesses can't be found and, you know, the memories of damned and all that. But the problem here, it seems to me, is you're also locked by your prior rulings. You're bound by the rulings of this court that the speedy trial issues apply all the way through sentencing. Right. But while there is that case law, there isn't any, in my view, clear guidance about what to do on how much you import Barker v. Wingo, which is dealing with a guilt-innocence trial, into not just an original sentencing but a resentencing after a vacator for Booker, etc., etc., there is not a lot of guidance about how much of that do you import into the sentencing context. Well, Your Honor, I would say this. When you've got a guy sitting in prison, it's pretty important to get that resentencing done on a timely basis. To me, that's, if anything, very critical when you've got somebody sitting in prison and the Supreme Court has said that any amount of additional time has Sixth Amendment significance. You know, that brings me to the question of why this guy didn't check on his case. This is a pretty sophisticated guy, isn't it? Well, I don't want to suggest to the court that he's not an intelligent guy because I think he is. I don't think he's as sophisticated in legal matters. I wish his lawyers had told him something about the case. They didn't, and I don't know why. Well, that's another question I have is, he says, my lawyer didn't tell me. Do we have any evidence from Mr. Ravkind? We tried to get, my office contacted him and tried to get some explanation, and we never got an explanation. Is that something that should be developed in the record? In other words, if the issue is his diligence and he says he didn't know and he relied on his lawyer to tell him and his lawyer didn't tell him, we don't typically take the defendant's word for that. At least we get the lawyer's position, and if they disagree, then it's a credibility finding for the district court. If they agree, then fine, you know, and Mr. Ravkind just may have made a mistake and all that. But it seems kind of like a big deal as a defense attorney to just ignore your client to that extent that he never gets resentenced, and I understand generally defendants don't have an obligation to go ask for a resentencing, but when your client's in jail or prison or whatever, you should be pursuing that. I mean, again, it's to your benefit to pursue the sentencing, not like when somebody's out and you say, well, let's not, let's let sleeping dogs lie. So do we just take Mr. Washington's word for this, or should there be a record developed as to what happened? Well, one thing we know for sure, Your Honor, he sat in prison quietly and served the entire term when his sentence had been vacated. No criminal defendant's going to do that if he knows what happened. And he doesn't have a burden? He does not. Under any circuit's precedent, would he have the burden to do that under the Barker v. Wingo factor? That's absolutely correct, Your Honor. Unless the Court has additional questions, I'll reserve the rest of my time. Thank you, Mr. Clarence. Thank you. Ms. Hayworth. May it please the Court, Gail Hayworth on behalf of the United States. Before you get into your argument, can you tell us how this terrible thing happened? Yes, Your Honor. The District Court found that it was a clerical inadvertence that caused the error. It was clerical inadvertence. Why did the U.S. attorney not pursue this? The record doesn't show whose clerical error it was. Was it the Court's? Was it someone else's? The record doesn't show. Everybody shares the blame for this. I mean, the clerk's office and the U.S. attorney's office and the defense attorney and everybody. That's absolutely right. Except the defense lawyer doesn't have the burden to sentence somebody. But, I mean, so we don't know how this happened. Well, a defense lawyer shouldn't let his client sit in jail on a time when he was on a vacation. No, certainly not, but we don't know. So you have no idea how this happened. That's right, Your Honor. I could speculate about that it was an error that occurred higher up so that it would cause across the board people to miss it. Have the U.S. attorney's office implemented any policies or procedures to make sure this doesn't happen again? I don't know whether or not a specific communication or policy went out with regarding to this specific case, but AUSAs generally are aware that they need to keep track of their rebands and to notify the court if too long goes by before a resentencing is scheduled. What's too long according to the AUSAs or to the U.S. attorney's policy? I believe the policy is that if 60 days go by, they will notify the court. But even, unfortunately, even with the best care and the best training, mistakes happen. And the Constitution allows for mistakes. And so the question here is whether this mistake rises to such a level as to deprive the defendant of his constitutional rights and therefore justify the dismissal of an affirmed conviction. Well, he's not arguing for that. So for the first time, Washington is now saying that he's not arguing to get rid of this affirmed conviction. He's only wanting to get rid of his restitution award. But what's interesting about that remedy is that the restitution award, that doesn't address at all the prejudice that was caused by the delay. The restitution award would have happened regardless of whether or not there was delay. Well, do we know that? Because there would have been a hearing, and he might have brought forth witnesses about what the victim impact was or cross-examined the witnesses and all of that in a more timely fashion. We don't know what the MVRA award would have been in the first if it would have been done in a more timely basis. Julie? Well, I mean, the district court found that it was outside of the remand, so it wouldn't have been addressed in resentencing, first of all. But secondly, Washington doesn't even dispute the actual underlying facts of the victim's loss or anything like that. He's just disputing the constitutionality. So the mandatory restitution award would still have been there even if he had been sentenced on time. Okay. What about if there's no prejudice requirement? There has been presumed prejudice in certain pretrial delay cases. No court has ever applied the prejudice in this context where the delay was post-conviction, post-affirmance of the conviction. So this court would be the first to ever apply that presumption. Moreover, the reasoning behind that presumption doesn't really apply here, because the reasoning behind it is, just as Judge Davis was saying, generally over time the presumption becomes stronger that there is some sort of evidentiary prejudice, that witnesses' memories have dimmed, that documents have become unavailable. But there is no danger of evidentiary prejudice in this case. It's post-affirmance of the conviction, so no danger to any evidentiary prejudice regarding the trial evidence. And Washington doesn't allege, and there's no indication that there was any prejudice regarding the sentencing evidence. As of all issues regarding calculation of the sentencing guidelines, were already resolved and decided before the delay even occurred. And as far as mitigating evidence regarding a person's character, generally by nature that is not evidence that arose over time, as it doesn't require the memory of a specific event, but rather just someone's understanding of the defendant's general character and person. Moreover, Washington actually used the delay to his benefit at resentencing, because he argued, based on facts developed during the delay, for leniency from the court. So there's clearly no evidence or any indication. All right, what is your response to the whole, you know, I had a lengthy dialogue with your counsel opposite about what we are to take from the fact that the judge reimposed the same sentence, and whether that is because the judge felt his hands were tied, or whether that is the sentence the judge thinks is the right sentence with or without, you know, mandatory guidelines. And, you know, six, seven, eight years ago, that's the sentence Mr. Washington would have gotten. What can you show me in the record, or what can you point to, that would support the notion that this was the sentence, regardless of when it was imposed? Judge Haynes, you're absolutely right on that point. The government agrees with you. The district court said that the 46-month sentence is the sentence that it found to be appropriate after considering all of the sentencing factors, and that it was not greater than necessary to meet all the objectives of sentencing. I'm sorry, so it agrees with you. I didn't understand what you're... The government, as well as Judge Haynes, we presume that the district court meant what it said. I don't know what Judge Haynes' position is. I'm sorry, what is the answer? Well, I'll just speak for the government then. We presume that the district court knows that it meant what it said, when it said, after considering all the sentencing factors that are required by statute, the section 3553 factors, the appropriate sentence in this case is 46 months. We presume that's what he meant it when he said it, and we can't assume that by saying that what he really meant was that a lesser sentence would have been appropriate under the sentencing factors. He just felt constrained and couldn't give a lesser sentence. So we believe the district court meant what he said. Moreover, the district court was in the best position to determine whether it would have felt constrained based on the delay, and the court found that the delay caused Washington no prejudice, and that finding is entitled to this Court's deference as well. Moreover, the record... Well, and that finding couldn't have been made if the judge thought that Mr. Washington was entitled to a lesser sentence but felt constrained not to give it. He couldn't also find no prejudice from the delay because obviously that would be the definition. We all agree spending more time in prison than you're supposed to was prejudicial. Absolutely. Let me just ask you one thing. You said no case had ever held that any relief, or a delay between the guilt phase and the sentencing? No court has ever presumed prejudice in a post-conviction delay context. Well, in our case, Juarez v. U.S., 74 case, we found a speedy trial violation where 2 years and 7 months lapped between the guilty plea and the sentence, and held that the proper remedy was to vacate the sentence and release the defendant from custody. So if we apply that here, the only thing left of the sentence is the restitution, right? Well, in that case, the court did not presume prejudice. It actually found prejudice because the district court actually said, if you had been sentenced earlier, I might not have given you any time at all. So the court actually found that the defendant was prejudiced by the delay. It didn't presume prejudice. And here, there's absolutely no evidence of prejudice. So you're just talking about the difference between just presuming prejudice without looking at any of the facts of the case and looking at the facts of the case and finding there would have been a different outcome. That's the two dichotomy you're looking at. And your position is that there's no case that's ever just said there must be prejudice based on time in the post-conviction affirmance phase. Yes. Do you want to address the Apprendi issue? Your opposing counsel did. The Apprendi issue. The opposing counsel has admitted that it's foreclosed by this court's precedent, and we agree with that. But he also says it's wrong. Did you want to address it on the merits? I will stick by with this court's prior precedent and believe that. Well, you know, that's interesting because the U.S. Attorney's Office has had a pattern, maybe not in a lot of cases, but at least in some cases, of coming and going, yeah, that's your precedent, then going to the Supreme Court and agreeing with the defendant that we should be reversed. And I'd kind of like to know that in advance because, well, we can't go against circuit precedent. We can advocate for en banc review. And so should we be doing that here? And are you all going to turn around and go, you know, the defendant's right on this, the Fifth Circuit's precedent is wrong, let's go tell the Supreme Court that, as has occurred on at least a few occasions where the U.S. Supreme Court has had to appoint someone to defend the Fifth Circuit's position because the U.S. Attorney won't do it, having asked for it? That's a fair point, Your Honor. I'm not prepared to speak for the office of what their position is on that today. But that's in the briefs. I mean, it's a majorly briefed issue in this case, whether the MVRA is constitutional or not. Both parties were admitting that it was foreclosed. I would be happy to address it after the opposing counsel files a petition for rehearing en banc. And I would be happy to file a letter to follow up if you would like that decision before. I would just like to know before you all kind of undercut your own, you know, when you agree with us and then go disagree with us, to me that's just, it's just inappropriate. I mean, we should at least have an opportunity to know that at the outset. I'm sorry, Judge David. Isn't one reason for the presumption of prejudice that after a long delay like this, eight years, it's just very difficult for the party who has the burden to show prejudice or the party to negate it to show one way or the other whether there's prejudice or not. So isn't that the reason for creating a presumption? The reason for creating the presumption is when the alleged prejudice is evidentiary prejudice. Well, now I don't know that any case says that's the only reason. I have never seen it applied when that wasn't the reason. And the rationale or the justifying rationale behind it is that, yes, over time the presumption of evidentiary prejudice increases, and that's Doggett who says that. And the reasoning is because memories dim, witnesses and documents become unavailable. Well, that's the most common reason, obviously. But isn't it also logical that, you know, if you've got to prove something, if you have the burden to prove it and so much time has gone by, it's just difficult to establish it one way or the other. So you create a presumption. Right, and that's also one of the rationale. And it's the idea that as it goes on, it's hard to show that the way time has eroded evidence. And so in addition to that, it's much harder. It's a harder burden to ask the defendant to do. In addition to the fact that naturally time does that to evidence, we create this presumption when there's been a long delay in the pretrial process. There's another reason, though, that we've talked about a presumption of prejudice in the case law, in our Johnson case in 1994 and in U.S. v. Blank in 701 F. 3rd, 1084, in order to have the government and the courts comply with the Speedy Trial Act's requirements. That it's not just, that the presumption can be applied in order to teach a lesson, for lack of a better word. That it's a, I don't want to say it's punishment, but that it's in order to encourage a more regular administration of justice with due process. Put some teeth into the room. Yes, and then that's separate and apart from evidentiary staleness. And we have articulated that as a reason. Would you like to address that reason and why it shouldn't be applied here? Well, if it's to put teeth into the Speedy Trial Act, that's a separate act, separate from the Constitution, that creates obligations on part of the government. And that has no obligation post-trial. The Speedy Trial Act doesn't apply post-trial, and it certainly wouldn't apply here where the delay occurred from remand to assent. What about put teeth in the efficient administration of justice? I'm sorry? Put teeth in the efficient administration of justice, regardless of whether it's in the Speedy Trial Act context or in the general constitutional status. Did you want to address that and why that's not necessary here? I assume you were going to say that's not necessary here, that we don't need to do this to teach a lesson or to put some teeth in something. Would you like to elaborate on that? I would say that we don't need to do it here because the Constitution doesn't require it here. Besides whatever policies or whatever that you want to make, the Constitution doesn't require it because it doesn't meet the factor test here. And the most important factor in this case is that there was simply no harm. When we're talking about an innocent mistake, a mistake nonetheless, but an innocent mistake that caused the defendant no harm, the Constitution doesn't require it. Well, that's kind of important, too, that it was a clerical error as opposed to intentional conduct on the part of the government, which might need to be punished or teeth put into it or something of that nature. I mean, the truth is clerical errors are going to happen. But there should be some stopgap. I mean, it's not that it went past the 60 days and went to 180 days by accident. It went eight years. So why shouldn't we use this case as one of these ones where we put some teeth in it? I mean, mistakes happen, and everyone here dropped the ball, which, yes, the buck stops with the government, but it does make it a little more understandable. And we do want to hold people accountable to their mistakes when it causes harm. But when it doesn't here, the remedy is just too severe, especially when who you're punishing for this is really the victim of his crime who had no responsibility whatsoever in causing the delay. It just doesn't make sense. Do you have anything else? If the Court has no further questions, I would just ask them to affirm. Does the government take the primary responsibility for this error? You've said everybody's to blame.  The buck stops with the government. That's right. So in closing, although the resentencing delay in this case was unfortunate and regrettable, it did not violate Washington's constitutional rights, given that, one, Washington failed to even exert minimal effort to find out the resolution of his appeal, let alone press for a speedy resentencing. Two, the delay was accidental and promptly remedied upon its discovery. Three, Washington suffered absolutely no prejudice from this delay. And four, the remedy he seeks serves only to relieve him of a legal obligation that he would have had regardless of the delay and to punish the victim of his crime, who is in no way responsible for the delay. So for all these reasons, the Court should affirm the judgment. Thank you very much. Okay, Mr. Clare. Addressing the presumption of prejudice issue, one thing I'd like to point out is, I mean, this defendant served the entire term of imprisonment that was originally imposed under a vacated sentence. In my view, in that situation, we should always presume prejudice because once you've done that, you can't undo the time served. That's the point I was trying to make. Well, but this goes back to the thrashing about how much we believe the district court in saying, you know, this is the right sentence. Well, I don't want to, you know, suggest that the district court was not acting in good faith, but I just felt that the district court's hands were tied. I mean, what is he supposed to do? There's no indication of that, and we do have judges who say my hands are tied and I wish I could do something different with minimum sentences and all kinds of stuff. So we have to assume that this judge as an honorable person would not find that the delay did not cause prejudice if, in fact, he wanted to give a lower sentence and was unable to do that by the practicalities of time. The cases I've seen, Your Honor, where district judges say that their hands are tied usually relate to, you know, a lot of those cases were when the guidelines were mandatory or when the law provides that they must be sentenced. Yeah, but how can it be consistent that the judge would have given a lower sentence if the resentencing had happened sooner and the judge's finding of no prejudice? How can those two things be squared? It's the same judge. Well, Your Honor, I think that the judge found no prejudice but didn't. I mean, you have to understand that, number one, the judge ignored the second conviction completely, which I think is inconsistent with what the Supreme Court has said. You're not insinuating, though, that the judge was trying to cover for the judge's staff's own mistakes? No, no, not at all. I just think that the judge was saying that it can't be prejudice because we're going to sentence him. What the judge said was we're going to sentence him based on the facts as they existed at the time of his original sentencing, which I don't think is consistent with what the Supreme Court requires. But that's what the judge did here, and the government has not appealed that. So I agree, there's no prejudice resulting from that. But there is prejudice in the sense that that's got to impact how a judge feels about a particular defendant. I mean, that's just so speculative because under that situation, then the judge's statement that, look, I've considered this, I've looked at it as if I did this in 2010 or whatever, and this is the sentence I'd give, we're always going to assume that the judge is lying. That's your position. It just seems completely inconsistent with the general deference we give district judges and the belief that they're honorable people and don't go around saying stuff that isn't true. I'm not saying that never happens or anything like that, but I'm just saying that's not the presumption that we have. We don't assume that. Like I say, Your Honor, I'm not saying that that's what the district judge did here, that he's lying about what his feelings were or anything like that. Let me just ask you this. The government says the Speedy Trial Act doesn't apply to this case. Do you agree with that? The Speedy Trial Clause of the Sixth Amendment applies, and I'm not sure why the standard would be any different for purposes of determining prejudice. I think prejudice can be presumed here when some defendant serves the entire term. But the Act does not. Your Honor, I'm not certain of that. I didn't raise an issue under the Speedy Trial Act, so I don't know the answer. That's not in front of us. The court has other questions. I do have a question. The very tail end of what she said was, you know, we had this discussion about sort of presumption of prejudice as a way to sort of put teeth in, punish the government, if you will, for its delay and all of that. But then she said, well, really who you're punishing is the victim here because all that's left to do is vacate the restitution. And what's your answer to that? The victim is certainly not at fault for this whole debacle. I think the Supreme Court has answered that in the Paroline case. It's held that the restitution is both – while there is a compensatory element to it, there's also a penal element to it. And this defendant is under that punishment, that restitution as part of the punishment. Right, but if we would presume prejudice solely for the sort of punish the government or put teeth in philosophy, we don't really accomplish that in this case, do we, because we just punish the victim who now doesn't get the restitution. I don't think you're just punishing the victim, Your Honor. For one thing, the court upholds the integrity of the system, number one, which I think is important. And number two, you know, I think the government is probably going to hear about it from the party that doesn't get restitution. And I would think that the public pressure to make sure that this doesn't happen again is significant. Now, the D.C. Circuit had a case where they just reduced the sentence because of the delay. What if we cut the restitution award? I would split the baby like that. How would you feel about that? Well, Your Honor, what I think ought to happen is there's a – he's been paying restitution under the judgment. There's a balance owed. How much has he paid? I think – well, he's paid the bulk of the restitution. They're all jointly and severally liable under the judgment. A number of the defendants pled guilty, and they were also ordered to pay restitution. But I would think that with respect to Mr. Washington, just cutting his obligation to pay the balance of the restitution is what ought to be appropriate here. This is a case where there are multiple defendants on this restitution? Yes, Your Honor. There were multiple defendants indicted. The district court in Washington's restitution order ordered that they would be jointly and severally liable for the payment of the full amount. Do we know how much is owed and how much has been paid? No. I asked that, Your Honor, and it is in the record, although additional payments have been made since then. But I believe it's in the neighborhood of $60,000. Okay. Very good. Thank you very much. Thank you. If I might close just by saying that I hope the court will consider taking in bonk the MVRA issue, which I consider to be a really significant issue. Thank you. Mr. Cleary, your court appointed, and the court appreciates very much your services. Thank you, Your Honor.